I am Michael Gahagan and am the plaintiff in this lawsuit. The standard of review is de novo since it is a Freedom of Information Act lawsuit. For 50 years, the FOIA, the Supreme Court, and the Fifth Circuit has held unwaveringly that the burden of proof is always on the government agency to prove all the legal issues in a FOIA case. Right. And my question is, why shouldn't we just remand this to Judge Barbier now that the government has said it has found some new documents, it is reviewing them, it's going to file a new declaration? Why don't we send it back and let the judge rule in the light of the government's concession and the new documents the government is going to produce? Well, Your Honor, there's two main reasons. The first one is Judge Barbier, for an unknown reason, simply has a complete misunderstanding of the burden of proof or he, something is going on where he's unlawfully placing the burden of proof on me. How do we know? They're going to give you some new documents. They're going to file a new declaration. We can't assume anything about a district judge when he gets new evidence. It seems to me what the government has done is beneficial to you. It has done. And so, why don't you want to run back to district court and let's get this straightened out? I understand. But what I would like to have is at least a ruling from the Fifth Circuit that the judge must follow the correct burden of proof. Oh, my Lord. Do you really think we're going to put an opinion that the judge is required to follow the correct burden of proof? That's up to you, Your Honor. Sir. That's up to you, Your Honor. I don't have an opinion either way. I'm just explaining to the court that on three separate motions for summary judgment, the judge has unlawfully applied the burden of proof onto me, refused to conduct a no-vote review over the government, and actually, citing that the court will not question the veracity of USCIS' submissions regarding reasons for withholding documents. Is this burden of proof, is it really going to matter that much on remand? I mean, the fact that the government's now found these documents, doesn't that basically show that the search wasn't that diligent? Well, also with the search, there's also a fact that the government is withholding 59 total documents in total where the judge has not conducted a segregability analysis, which I brought up in the initial first motion for summary judgment. That goes back to the de novo review issue. The judge has a duty to review these documents either in camera or at least mandate that the government provide legal explanations on an adequate Vaughn Index. There's currently still five documents outstanding that the judge has failed or refused to bring in for an in-camera review and has also failed to order the government to present a legal description of the reason for the withholding on either the first or the second Vaughn Index. So the court has no idea what's in them, in those documents, but the court keeps dismissing my claims in granting sua sponte summary judgment for the government. For whatever reason, the court is just not following their duty for de novo review or placing the burden of proof on the proper party. Even though the government may find additional documents, they may . . . They may find. They've said they have found. I understand that, Your Honor. Even though they have found additional documents, that does not mean that the judge is going to conduct de novo review over those documents. There was 38 pages initially that were not included in the first Vaughn Index. There were five pages that were not included in the second Vaughn Index. Each time, the judge flatly said the court will not question the veracity of USCIS's submissions regarding withholding of the information. There's also an issue of . . . There's just no telling what this new declaration is going to say. I understand, Your Honor. There's also an issue . . . Maybe they're going to concede error. That would be nice. There's also an issue of the adequacy of the search. The search has been proven over and over again to be legally inadequate. I didn't question the search was inadequate. They've told you so. They've said, we've gone back and we're not sure we did the search. Yes, Your Honor. They stated that the search was legally inadequate for one person. There are actually people on both the Welsh declaration . . . well, only on the Welsh declaration that simply refused to search whatsoever and then claimed there were no responsive documents after they refused to search. This also goes back to an issue of whether I'm eligible for attorney's fees at the end of this. The judge continues to dismiss my case and then cite that since there was no judicial order, I'm not eligible for attorney's fees at the end of this case. The 2007 Open Government Act codified the catalyst theory, actually stating that if a plaintiff in a FOIA lawsuit files a lawsuit and they receive documents after the lawsuit is filed, then that person is eligible for attorney's fees. I have received 436 pages since the initial filing of the lawsuit, plus 33 pages during the first appeal, plus now some more documents. This judge, all along the way, has simply held that I'm not eligible for attorney's fees. The second denial of eligibility for attorney's fees was simply a cut and paste of the first denial for attorney's fees. There's no reason to believe that this judge wouldn't do the exact same thing if he doesn't issue a third order, cut and paste the first two, and place it on the third denial for attorney's fees, at which point, unfortunately, I'd be back for a third appeal. You're using the catalyst theory for fees, is that right? That's correct. The catalyst theory and I received a judicial order from the Fifth Circuit on the first appeal when it vacated the judge's previous sua sponte summary judgment for the government and also vacated his dismissal of my first motion for summary judgment. I'm not sure that first action by this court would entitle you to fees, but ultimately, of course, if you've gotten documents, you may have a legitimate claim to them. Yes, sir. That's all I'm asking at this point. For whatever reason, the judges simply refused to follow the catalyst theory on this issue. I have received over 400 documents since filing the lawsuit, and I received zero at the beginning. The judge has actually created his own reason for denying the mandatory wait time exception. The judge has created this out of his own volition. There is no mandatory wait time exception written into the Freedom of Information Act or into the Oprah Government Act of 2007. Senator Leahy was adamant from the floor when he was the sponsor of the bill, and he actually wrote that under FOIA, a FOIA requester can obtain attorney's fees when he or she files a lawsuit to obtain records from the government, and the government releases those records before the court orders them to do so. The D.C. Circuit has held the same. The Fifth Circuit in Batten v. IRS held that the Fifth Circuit has long held that a party may demonstrate that he substantially prevailed in a FOIA lawsuit in one of two ways, either obtaining a court order or through the catalyst theory. That was in Batten v. IRS in 2013, after the catalyst theory was codified into the Open Government Act of 2007. I received over 400 documents from the government. My lawsuit was the catalyst for the 436 initial pages, for the 33 pages that were fully withheld that was produced during the first appeal, and now, possibly, these additional documents. I'm not— The 33 pages that were withheld that prompted our courts to remand the district courts— Yes, Your Honor. Those were documents that were being reviewed at a second level, correct? No, sir. They were referred to Immigration and Customs Enforcement. That was not a second— Referred to ICE for what? I'm not sure. That's what the government would have to answer. It was my understanding there were—the government's position was it's questionable whether we have to produce these documents, and we're going to refer them to ICE for ICE to let us know, and then they produced them. That's correct. Unfortunately, my case was denied. There was no order for the government to ever produce those. If I would not have filed an appeal, there's an open question of whether I ever received those documents. There was no promise from the government they would give those to me. There was nothing binding. There was no order. The judge just simply ignored his right of de novo review and to make sure I received these documents and just dismissed my case. I had to appeal. I had no other choice. Once I filed the appeal, three weeks after I filed my appellate brief, and the government had three weeks to review my appellate brief, that's when I actually received the 33 pages, which is slightly redacted, but I did receive the information. All right. Thank you, Mr. Gahagan. Thank you. You've saved time for rebuttal. Ms. O'Hale? May it please the Court, good morning, Your Honors, AUSA's Paige O'Hale and Peter Mansfield on behalf of the agency in this matter. Why don't you start with addressing the attorney's fees issue under the Catalyst Theory and explain if it's still the government's position that there are no fees due here under the Catalyst Theory? Your Honor, ultimately, we don't know what the facts are going to be in this case, and that's why we've asked for it to be remanded, and that's why we brought it to the Court's attention as soon as possible. All right, but documents have already been produced after Sue was filed, is that right? Are you referring to the— Any documents? Yes, sir. There were a number of documents, 264 pages in full, and several others that were either in part redacted or referred to ICE. Your Honors, in order to prevail under the Catalyst Theory, you have to show that your lawsuit caused the production. Here, the lawsuit was filed on June 2nd, which was less than a month after USCIS received the FOIA request. USCIS receives 18% of all FOIA requests in the nation. So the fact that the lawsuit was very quickly filed doesn't demonstrate anything other than USCIS is moving through its administrative process. So again, we don't know what's going to happen on remand when these new facts are fully fleshed out, but as of the District Court's original determination on eligibility, which again is only the first prong that you look to under attorney's fees, as of prior to our motion to remand, the government contends that Mr. Gahagan was not eligible for attorney's fees. What is the status of the document, the latest document production to Mr. Gahagan? Your Honor, that is still being processed. What happened is Mr. Gahagan has filed a second FOIA request. This lawsuit concerns the 2014 request. Just a few weeks ago, he filed a second request, which I'll call the 2016 request. In the 2016 request, he is seeking notes and other similar government work product on how the 2014 search was done. So they're not exactly overlapping. He's seeking new documents that wouldn't have been responsive. But as I understood the motion to remand in this action, I took it to mean that in preparing for oral argument or something, someone went back and checked and found that what they had previously advised the court was not correct. Your Honor, what happened is in processing this new FOIA request, the 2016 request, the 2014 Welsh declaration, the agency said it looks like there is an error. And that is when they brought it to this office's attention about two weeks ago. So Your Honors, in light of the motion to remand that was filed on May 23rd, my remarks today are incredibly limited. It's limited to two issues. Should the court choose to reach it, there is a pure issue of law that can be affirmed, and that is regarding the referral of the 33 pages from USCIS to ICE. Those are two separate government agencies that are both subject to FOIA. The district court applied McGee, which is out of the D.C. Circuit, held that the agency satisfied McGee and ultimately concluded that the referral was legally proper. And the agency asked that should you choose to reach it, you may affirm that. Now the second issue is regarding the motion to remand. In light of the facts, which aren't fully developed yet, the agency respectfully submits that that portion of the judgment regarding the referral and the attorney's fees, pardon, regarding the legal adequacy of the search and the attorney's fees, that those portions be vacated and remanded. Your Honors, turning to the referral, FOIA only prohibits the improper withholding of agency records. In other words, it doesn't prohibit the withholding of records under specific FOIA exemptions. Here Mr. Gahagan has a client in removal proceedings before ICE. He asked to access his client's A-file. ICE provided him with 203 pages of the A-file and said USCIS is the legal custodian of record of the A-file. If you wish to see the remaining documents, file a FOIA request with USCIS. He did. There were 436 pages that were identified. Drilling down through the four categories of what was produced in full, redacted, etc., there were only 33 pages that were referred from USCIS to ICE. That is because ICE is the agency that originated the documents. These are ICE. These 33 pages are pages that were created by ICE. So under applicable regulations, which is 6 CFR section 5.4C, USCIS referred those pages to ICE for review and release. And ultimately, they were released directly from ICE to Mr. Gahagan in November of 2014. This court has never encountered a referral issue. It is never, at least in the agency's research, it couldn't find a Fifth Circuit referral case. So the agency cited the D.C. Circuit to the district court, which is McGee, later applied in both Sussman and Peralta. In McGee, the D.C. Circuit said provided that the district court holds that the referral didn't significantly impair access or significantly increase the wait time, that referral is permitted. Here, the district court applied McGee, said the referral followed the regulations and didn't increase the wait time, and ultimately made the legal conclusion that the referral was permitted. The documents that were recently found, I don't recall exactly from your motion, but they have been also referred to ICE, haven't they? No, sir. Then who's reviewing those documents? It is my understanding, and this isn't in the record, so this is just what has been relayed to me, USCIS is in the process of reviewing those. Those documents haven't been produced yet. We don't know what documents may be produced. It could be that they are all subject to FOIA exemptions, and again, that is why we ask that this issue go back to the district court for consideration in the first instance. What about the five documents that Mr. Gahagan referred to that he contends the district court refuses to review in camera? Your Honor, the district court was presented with 59 pages that were withheld in full and had the FOIA exemptions. Mr. Gahagan filed that in the record and said, Your Honor, there are 33 pages that have been referred to ICE that aren't described in the Vaughn Index, in USCIS's Vaughn Index. At no time did he say, here are five pages, so it would be, suddenly it's 38 pages. Actually, he said five documents. I said five pages. That was my mistake. He said five documents. I believe, Your Honor, it is five specific pages. This court has said that there is no duty on the district court to search the record for material issues of fact, and presenting the district court with 59 pages and say, Your Honor, find the error without identifying it for the district court, that's unreasonable, but moreover, if you count the 59 fully withheld pages that are described in the Vaughn Index, or if, pardon, if you count all of the fully withheld pages, there are 59 pages described in that Vaughn Index, because I went through and I counted every one of them. And so, I can't find where these five pages aren't described. It could be that there's just a scrivener's error, but this court and RSR Corporation has said the district court doesn't have a duty to search the record looking for material issues of fact, and that's for the parties to bring it to the court's attention. So, Your Honor. Are there any, in the government's view, are there any discreet legal issues that it would be helpful for us to decide now if we were to agree with you to remand in light of the newly located documents? In other words, it's not very efficient to have things bouncing back and forth between the district court and this court if there are such issues that can be determined now. Your Honor, the referral issue is one such issue, should you choose to address it. That is a discreet legal issue. Regarding the remaining standards that the district court needs to apply, the district court correctly cited the applicable law at pages 449 through 453 in its original summary judgment order, and then subsequently at pages 727 through 742, the district court cited the applicable law. What about the Vaughn Index issue? Is that a discreet issue that can and should be decided now, or is there any particular reason not to decide it now? Your Honor, I think I need clarification on what exactly you're referring to, because Mr. Gahagan has made an argument that it all needs to be one doc, one coup, one document. That wasn't briefed in the body of his brief, it was briefed in the footnotes. Is that what you're referring to? In any kind of Vaughn Index issue, is there any such issue that can and should be decided now? No, Your Honor, there isn't. Now also on the Vaughn Index question, and this gets back a little bit to the attorney's fees question that I asked you at the beginning, because the government did produce a second Vaughn Index, apparently as a result of the litigation, isn't that, doesn't that entitle Mr. Gahagan to attorney's fees? No, Your Honor, and again, there's two separate agencies that we're dealing with here. USCIS is the only named party. USCIS produced a Vaughn Index in July of 2014. ICE, when it did its 33-page release, ICE did a separate release. And that wasn't caused by Mr. Gahagan's lawsuit, that was caused by that referral issue working its way through the process. But again, we don't know how the attorney's fees issue might change on remand, and that's why the agency respectfully requests that this matter be remanded. Well, on the point you're raising about that we should decide that the referral is proper to ICE, that that's one of the issues you want, that's the only issue you want us to advocate the order and remand it. How do we know this new declaration's not going to show that there was an improper referral to ICE? Your Honor, the facts that we know right now doesn't indicate that there's a . . . Well . . . Well, and correct. And so if Your Honor wishes to remand it in full, that is what we originally asked for in our motion in order to save you from oral argument. Now that we're here and I'm addressing you, I'm suggesting you could address that. But if not, the agency is fully prepared to go forward with the case on remand. All right. Thank you, Ms. O'Hale. Thank you. Mr. Hagan, you've saved time for rebuttal. Your Honor, with regard to the DeNovo review issue, the Supreme Court has held that the FOIA expressly directs the district courts to determine the matter of DeNovo. Well, that was in U.S. Department of Justice versus Reporters Committee for Freedom of the Press. The judge in this case has held that the court will not question the veracity of USCIS' submission regarding reasons for withholding the documents. Let's say, for example, these new documents are fully withheld. The judge is still going to say the court will not question the veracity of USCIS' submissions regarding withholdings of the documents. The Fifth Circuit held in Cooper-Cameron that FOIA directs the district court to determine the matter of DeNovo, giving no deference to the agency's determinations. Cooper-Cameron . . . Attorneys' fees, your catalyst theory . . . Yes. I think you basically said before that, well, you filed suit and then you got the documents afterwards, but do you agree there with, I guess what some courts have called the squeaky wheel theory, which is that if . . . you can't just rush to the courthouse and then automatically get attorneys' fees just because the agency is still processing your request. So one, do you agree that that's the law, that you have to show that something changed other than how they would normally handle these requests administratively? And if that is . . . if you agree with that, how can you show that in this case? No, Your Honor, the squeaky wheel is not law. The Open Government Act of 2007 outlawed that. Like I said . . . What in the statute outlaws it? Because my understanding is courts adopted the catalyst theory, then the Buchanan case, which was a Civil Rights Act case, but says catalyst theory is no good . . . That's correct. And so courts stopped following it even in FOIA, and then in the Open Government Act, Congress says, no, put it . . . it should be there in FOIA. But I know the D.C. Circuit has said that just brings us back to the pre-Buchanan case law in which we had a catalyst theory, but also this squeaky wheel. I mean, it's your position you can file a FOIA request with the agency and then within 30 days file a lawsuit, and because they have this huge stack of FOIA requests, you automatically get attorneys' fees? Your Honor, it's not my position. That's the law. The law . . . So it is your position. Yes, it is. Previous to the 20-day mandate in FOIA, there was a 10-day mandate. The government complained that the 10-day mandate was too short, so Congress went back in and stretched it out. They doubled it to 20 days. The squeaky wheel theory that the judge has adopted from a 1991 Western District of Texas case is unlawful. Under the judge's squeaky wheel theory, anytime the judge thinks that the plaintiff is just a squeaky wheel, he shouldn't get paid. It doesn't matter if the government has a four-year backlog. If the judge thinks that three and a half years you filed too soon, you were just a squeaky wheel, that gives the judge complete and total unfettered discretion on who to grant attorneys' fees or find them eligible and who not to. That's why the government specifically enacted the Open Government Act to prevent, in this case, the D.C. Circuit Court and the Supreme Court from refusing to follow the catalyst theory. But as we go back, even if there was a squeaky wheel, the 33 pages were released after I filed appeal. The second Vaughn Index was released a year after the case was remanded, after I filed a second motion for summary judgment specifically asking for a second Vaughn Index. They produced a second Vaughn Index in order to prevent a judgment from the court ordering them to produce a second Vaughn Index. And those five pages— What do you say to her argument that that's because the second index came from ICE and it took a while to get the matter to ICE and then for ICE to work its way through? I understand that, but there's 99 separate agencies right now that are under FOIA. In order to be—if you want to hold that a referral is lawful, I'll have to sue 99 separate agencies in every case in order to make sure I have the right one. Otherwise, it can be referred back and forth. Those documents were all in the possession of U.S. Citizenship and Immigration Services on the day I filed my FOIA request, all of them. They may have originated with ICE, but they were in CIS's possession. After I filed my lawsuit, after I filed my first motion for summary judgment, after the government asked for another motion to continue to extend the case, then they referred them to ICE where they sat. I recently got a case back that's not in litigation where it took ICE two and a half years to get me the documents back off of USCIS. If I don't go to court, I may be waiting another two and a half years. I have to at some point file a lawsuit to protect my client's right to procedural due process and effective assistance of counsel. I need those documents to represent my client in court. Does the immigration proceeding get stayed pending your receipt of these? I mean, you obviously make a lot of these requests. Not a lot, but I make some on specific cases. The judge, if he wants to move forward, it's his courtroom. There's no law saying that he has to wait for me. What's happened in this case? Because this whole thing's been going on. The judge has been nice enough to stay the case. We keep having to appear in court for master calendar hearings where I tell the judge, Your Honor, this case is still ongoing. There's still five pages outstanding. The judge won't conduct a no vote review. The search is inadequate. I'm going back to the Fifth Circuit. So we've been going on for two years now. This is a very simple FOIA request. And as you'll see in my briefing, there was never a legally adequate search conducted. So this is another issue that's going to be taken up in a third appeal if this case gets remanded. Thank you, Mr. Hagan.  And the court is in recess until 9 o'clock.